common school.　People v. Board of Education of City of Brooklyn, 13 Barb. 400; St. Patrick's Orphan Asylum v. Board of Education of City of Rochester, 34 How. Prac. 227.　If an orphan asylum is not a school or institution of learning, this provision of the constitution does not apply, and section 14 of article 8 does apply.　For that section provides that:

"Nothing in the constitution shall prevent any county, city, town or village from providing for the care, support, maintenance and secular education of inmates of orphan asylums, homes for dependent children or correctional institutions whether under public or private control."

Upon this view, there is no conflict between the two sections of the constitution referred to.　This construction agrees with the opinions Mr. Choate and Mr. Root expressed in the constitutional convention of 1894, and with the dicta of the court of appeals.　People v. Fitch, 154 N. Y. 14, 47 N. E. 983, 38 L. R. A. 591; People v. Comptroller of City of Brooklyn, 152 N. Y. 399, 46 N. E. 852.　I think, also, that the board of education is the agent of the city of Rochester, intrusted with one branch of the city's work, and that when the constitution, in section 14 of article 8, says that nothing shall prevent a city from providing for the secular education of inmates of orphan asylums, it means that the proper boards, officers, or agents of such city should have the charge of providing such education.　A city necessarily acts through boards and officers who have charge of definite spheres of action, and, where a statute or constitutional provision applies to a city as a whole, it must likewise apply to all of its departments.

It is also contended by the plaintiff that, inasmuch as the board of education derives its power from that part of the charter passed in 1898 known as the "Dow Law" (chapter 660), there is no authority in that law for payments to teachers in orphan asylums.　I think, however, that, inasmuch as that law makes the power of the board of education subject to the general statutes of the state (section 126), the provision of the consolidated school law in reference to orphan asylums referred to above applies to said board of education, and it has power to provide for teachers in said asylums.　It follows, also, that, if the acts of the board of education in employing heretofore the four teachers who are made defendants were lawful, then said teachers were in the employ of the board, and are protected by section 140 of the Dow law, which exempts such teachers from the conditions as to qualifications or eligibility imposed by that act.　The motion for an injunction should therefore be denied, with $10 costs.

Motion denied, with $10 costs.

---

(35 Misc. Rep. 418.)

### BEECHER v. PRESS PUB. CO.

(Supreme Court, Trial Term, Kings County.　July, 1901.)

LIBEL—VERDICT—SETTING ASIDE.

In an action for libel, plaintiff recovered judgment.　The libel charged plaintiff with having kept his aged father's securities.　On appeal the appellate division decided that the trial justice should have directed a verdict for defendant, that the innuendo charged in the complaint was insufficient, and that the publication was not libelous.　On a second trial

the justice instructed the jury that, if the charge was made and was false, plaintiff had a right of action, and authorized them to find that the innuendo stated in the complaint, if necessary, charged larceny. The jury found for the defendant. *Held*, that the verdict would not be set aside as the jury must have found the publication was not libelous, or that the facts proved justified the charge.

Action by Eugene F. Beecher against the Press Publishing Company. Verdict for defendant. Motion to set aside denied.

H. S. Worthley, for plaintiff.

Bowers & Sands (J. W. Gerard and M. L. Towns, of counsel), for defendant.

RUSSELL, J. The plaintiff moves to set aside the verdict of the jury rendered for the defendant in his action for libel on account of a publication in the New York World. On a previous trial a verdict was given for the plaintiff for $4,000. This verdict was set aside and a new trial directed on appeal by the appellate division. Beecher v. Publishing Co., 60 App. Div. 537, 69 N. Y. Supp. 895. The appellate division held that, as the trial justice charged the jury that the article was not libelous per se, he should have directed a verdict for the defendant; that the innuendo charged in the complaint, being one which could not be drawn from the article, was insufficient; and, at the close of the opinion, approved the principle as applicable to the case that the publication was not a libel per se. Accordingly it became a serious question for the trial court upon the new trial as to whether, under the rules laid down by the appellate division, the case should go to the jury at all. But it seemed better by the court to take the verdict of the jury, in order to end the litigation, if possible. In rendering their verdict the jury must have found that the article was not libelous, or that whatever was hurtful to the real character of the plaintiff was justified by the facts proved upon the trial. Therefore, it would be in derogation of the decision of the appellate division to set aside a verdict for the defendant, and thus rule that, as a matter of law, the jury should have found some damages by way of compensation for a substantial injury to the real character of the plaintiff in the publication of the article.

The publication was made in the World, November 14, 1899, and is as follows:

### "EDWARD BEECHER'S BIG HEART.

"There were many who regarded old Dr. Edward as the best and greatest of the Beecher family,—the biggest-hearted and broadest-minded. Fifteen of these admirers, including the Rev. R. R. Meredith, pastor of the Tomkins Avenue Congregational Church, and S. V. White, of Wall street fame, gave one hundred dollars each, annually, to Dr. Beecher's support. At that time, early in the '90's, the only inmates of the Beecher house, in Macon street, were the doctor, his wife, and their adopted daughter.

### "EUGENE F. BEECHER.

"Eugene F. Beecher, a younger son, married a wealthy Brooklyn girl, and lived in a handsome house in Brooklyn. Frederick W. Beecher, the elder brother, was at that time a Presbyterian minister presiding over a church in the northern part of the state. 'Come to see me at once,' wrote the old-

doctor to Dr. Meredith one day. 'I am in sore trouble and need your advice.' Dr. Meredith lived at No. 97 McDonough street, only a short distance from Dr. Beecher's house. Within ten minutes of the receipt of this alarming message the kindly pastor of Tomkins Avenue Congregational Church was with his old friend. Dr. Beecher then explained that his son Eugene had obtained possession of certain valuable securities belonging to him, and had refused to return them. Investigation revealed the fact that Dr. Beecher had fallen heir to considerable property, including the Macon street house, on the death of a relative.

### "EUGENE RETURNED SECURITIES.

"Dr. Meredith handled Eugene Beecher without gloves. In a letter to the young man, Dr. Meredith gave him a choice of alternatives in words like these: 'Return those securities to your father within twenty-four hours, or get out of Brooklyn. You can't keep them and continue to live in this city, where your family has held an honorable and distinguished position.' The securities were returned. They were all turned over to S. V. White, who handled them to the best advantage for Dr. Edward Beecher, releasing the faithful coterie from further donations."

The court, upon the second trial, left it substantially to the jury to say whether the article intended to charge, so that people of ordinary comprehension would so understand it, that the plaintiff had kept possession of his aged father's securities in a dishonorable way, and that, if such was the fair import of the article, the statements and suggestions, if untrue, afforded a right of action, because the sting to character may thus be as assuredly inflicted as by a more bold and direct assertion. The court also allowed the jury to find, if an innuendo in the complaint was necessary at all, that the one stated in the complaint, that the crime of larceny was intended, as the greater included the less, would cover a milder charge of the same generic character, and also that under our system of pleading, based upon the cardinal idea of having the facts pleaded, and allowing the inferences from those facts to be drawn by the silent operation of the law, an innuendo was of little use, provided the fair and natural import of the words of the libelous article brought the minds of the readers to the hurtful conclusion. Otherwise we would magnify the force of a pleading beyond its real reason and occasion, and put technical rules, however hoary they had grown by age, above the results of substantial justice. It will thus be seen that the trial court went as far as proper deference to the opinion of the appellate division would allow, and that the jury has pronounced against the plaintiff in his claim that substantial hurt has come to him by this article. I cannot hold there was no defense except a diminution of damages.

After the serious consideration of the evidence relating to a charge of substantial injury to character, it would be grotesque to give deliberate attention to a claim for six cents damages and six cents costs on the plea of the right to a nominal verdict, nor do I understand that counsel for the plaintiff asks that this court shall do so. Motion for new trial denied.

Motion denied.